## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

———————————————————— )
EDZER VALLES,                         )
                                      )
                    Plaintiff         )
                                      )
          v.                          )        Docket No:_____
                                      )
                                      )        **JURY TRIAL**
                                      )        **DEMANDED**
NUZZO ELECTRICAL CONTRACTORS, )
INC.; FRANK NUZZO, JR.                )
                                      )
                                      )
                    Defendants        )
———————————————————— )

## COMPLAINT AND JURY DEMAND

### Parties

1.      Plaintiff Edzer Valles ("Mr. Valles" or "Plaintiff") is a male resident of the State

of Connecticut, residing at 611 Colorado Avenue, Bridgeport, CT, 06605

2.      Defendant Nuzzo Electrical Contractors, Inc. (the "Company") is a Connecticut

corporation with its principal office located at 70 River Street, Bridgeport, CT, 06604.

3.      Defendant Frank Nuzzo, Jr. ("Nuzzo") is an adult male, and, upon information

and belief, resides in Connecticut. At all relevant times, Nuzzo was the owner of the Company.

Nuzzo is named in both his individual and official capacities.

### Jurisdiction and Venue

4.      The court has subject matter jurisdiction under 28 U.S.C. § 1331 because the

Plaintiff has brought federal claims, including claims under Title VII, 42 U.S.C. § 2000e-2, et al.,

and Section 1981 ("1981") 42 U.S.C. § 1981. The court may exercise supplemental jurisdiction over Mr. Valles' state law claims. 28 U.S.C. § 1367.

5.      Venue is appropriate in the United States District Court for the District of Connecticut, as the acts or omissions giving rise to the claims in this Complaint occurred in Connecticut.

6.      This court has personal jurisdiction over Defendant Nuzzo because he is a resident of the state of Connecticut. Additionally, Nuzzo has numerous contacts and connections with and within Connecticut. For example, Nuzzo owned and operated the Company in Connecticut, worked for the Company in Connecticut, supervised Mr. Valles in Connecticut and terminated Mr. Valles in Connecticut.

7.      This court has personal jurisdiction over the Company because it resides in Connecticut, including, but not limited to, by being incorporated in Connecticut, and  by having its principal office in Connecticut. The court also has personal jurisdiction over the Company because the Company has engaged in and transacted business in the State of Connecticut, including owning, managing and/or operating a facility located at 70 River Street, Bridgeport, CT, 06604 and by employing the Plaintiff in Connecticut, and the Plaintiff's causes of action stem largely from business transactions and employment actions by Defendant within the State of Connecticut. Indeed, the Plaintiff was employed by the Company in the State of Connecticut, was managed and reprimanded by the Company in the State of Connecticut and was terminated by the Company in the State of Connecticut.

## Statement of Facts

8.      On or around August 26, 2019, Mr. Valles began employment for the Company as an apprentice electrician based in Bridgeport, Connecticut.

9.      Mr. Valles is a darker-skinned, African American man. Throughout his employment, Mr. Valles primarily worked out of a Company facility located at 70 River Street, Bridgeport, CT, 06604.

10.     At all relevant times, the Company employed 15 or more employees for 20 or more calendar weeks in the preceding 12 months.

11.     At all relevant times, Mr. Valles was a qualified employee, and his job performance was satisfactory.

12.     Mr. Valles was the only darker-skinned, African American men working for the Company in his location.

13.     Soon after Mr. Valles was hired by the Company, he began to experience racially degrading and hostile comments and actions directed towards his race and/or color.

14.     For example, Mr. Valles' floor supervisor, Chris Veena ("Veena") told Mr. Valles to stop "working like a nigger."

15.     Veena is a Caucasian male.

16.      Veena also loudly asked a white coworker, Michael Sheets ("Sheets"), who was going to Baltimore, why he was going to Baltimore because "it's nothing but a bunch of niggers."

17.     Shocked by Veena's outwardly discriminatory and hostile comments related to his race and color, Mr. Valles raised protected concerns to his direct supervisor Ernest Texiera ("Texiera") that Veena's comments were blatantly discriminatory with regard to his race (African American) and color (black), and made him uncomfortable.

18.     Texiera is a Puerto Rican man.

19.     Texiera, instead of addressing Mr. Valles' protected concerns, told Mr. Valles to keep his protected concerns to himself, as the Company had a history of mistreating employees of color in the past.

20.     Indeed, as Texiera refused to take any action to address Mr. Valles' protected concerns, the Company's culture of racially derogatory langue and discriminatory work atmosphere was perpetuated.

21.     For example, in or around January 2020, Mr. Valles heard his co-worker Frank Acavallo ("Acavallo") call Mr. Valles' dark-skinned, African American co-worker a "good working nigger."

22.     Acavallo is a lighter-skinned Caucasian man.

23.     Mr. Valles approached Acavallo and raised protected concerns that Acavallo's blatant discriminatory comments were grossly offensive and that he personally found the word "nigger" to be highly offensive.

24.     Instead of addressing Mr. Valles' protected concerns, Acavallo laughed at Mr. Valles and walked away.

25.     Mr. Valles also overheard other offensive comments by Caucasian employees directed at minority employees.

26.     For example, Mr. Valles heard Joe Cardonelli ("Cardonelli") and Dillon (last name unknown, "Dillon") refer to darker-skinned Hispanic employees as "pablos" and further express the stereotype that darker-skinned Hispanic employees were in the United States illegally.  Upon information and belief, Cardonelli and Dillon had no reason to plausibly believe that the darker-skinned Hispanic employees were in the United States illegally and expressed this belief purely based on racist stereotypes related to darker-skinned Hispanic employees.

27.    Cardonelli is a light-skinned Caucasian male.

28.    Dillon is a light-skinned Caucasian male.

29.    Additionally, in or around March 2020, Veena commented within Mr. Valles'
earshot that it was "crazy a hardworking white guy can't get unemployment but a nigger can."

30.    Indeed, racist comments were common at the Company, including in the presence
of managers, and clearly were accepted as part of the Company's culture.

31.    Because the regular use of discriminatory and racially disparaging remarks by
Veena and other employees made him uncomfortable, Mr. Valles raised further protected
concerns to Texiera that Veena was continuing to use discriminatory language towards African
Americans at the Company, including continually using the word "nigger."

32.    The next day, Mr. Valles was approached by Veena who appeared angry, but
stated that he did not see Mr. Valles "like that," referring to his use of the word "nigger." Upon
information and belief, Veena had been told by Texiera that Mr. Valles has raised protected
concerns about his racist statements.

33.    Mr. Valles raised protected concerns to Veena that he was offended by the
continual use of the word "nigger" at the Company and that Veena and other Company
employees should cease using the word "nigger" to refer to African Americans and others with
darker skin color.

34.    Veena did not address Mr. Valles' protected concerns, but appeared annoyed that
Mr. Valles was asking him not to use the word "nigger."  Indeed, Veena laughed at Mr. Valles.

35.    Following Mr. Valles' raising of protected concerns, Mr. Valles began to be
treated in an increasingly discriminatory and retaliatory manner by non-African American
employees.  For example, non-African American employees periodically started to refuse to

work with Mr. Valles and treated Mr. Valles dismissively whenever he asked a question of non-African American employees.

36.     Accordingly, in or around May 2020, Mr. Valles approached Nuzzo, the owner of the Company and raised concerns to him about the discriminatory and retaliatory treatment he had experienced at the Company as a result of his race, the continual use of the word "nigger" in the workplace, and the retaliatory treatment he had received from non-African American co-workers after he raised protected concerns.

37.     Nuzzo is a lighter-skinned Caucasian male.

38.     Instead of addressing Mr. Valles' protected concerns, Nuzzo stated that Mr. Valles "needed to do a better job getting along with the guys."

39.     Shocked, Mr. Valles raised protected concerns that it would be difficult to "get along" with his non-African American co-workers as they continually called him a "nigger," made fun of himself and other minorities in the Company and repeatedly alluded in a discriminatory manner to his race.

40.     Nuzzo ignored Mr. Valles' protected concerns and became extremely angry, stating that Mr. Valles should not "pull that race card bullshit."

41.     As a result, Mr. Valles continued to be called "nigger" by his non-African American co-workers and was increasingly treated in a retaliatory manner for raising protected concerns about this overtly discriminatory conduct to Nuzzo, Texiera, and Veena.

42.     In or around July 14, 2020, Mr. Valles came into contact with an individual who had been exposed to COVID-19.

43.     When Mr. Valles went to his doctor, his doctor told him to self-quarantine for a week and gave him a medical note instructing  Mr. Valles to subject himself to self-quarantine.

44.     Mr. Valles notified Veena via phone call that he was under doctor's instructions to self-quarantine due to COVID-19 exposure and presented Veena with a doctor's note substantiating his need for leave due to a quarantine caused by exposure to COVID-19, stating that he (Mr. Valles) was ordered to quarantine due to COVID-19 exposure.

45.     However, in or around July 22, 2020, when Mr. Valles returned to work, Nuzzo approached Mr. Valles and accused him (without any valid reason) of faking illness, stating that Mr. Valles was "on his radar."  This was clearly a threat to retaliate against Mr. Valles for taking leave.

46.     Mr. Valles' non-African American co-workers had taken leave from the Company due to COVID-19, and had not come under the same scrutiny and retaliatory threats from Nuzzo.

47.     Mr. Valles raised protected to Nuzzo, Texiera and Veena that he was being treated in a discriminatory manner due to his race and color, as well as seemingly in retaliation for taking leave for COVID-19, to no avail.

48.     Indeed, one week later, on or around July 30, 2020, Nuzzo called Mr. Valles into his office after his shift and told Mr. Valles that he was terminated.

49.     Nuzzo cited no performance concerns, nor any other reason for termination, other than that Mr. Valles was allegedly "not being a good fit."

50.     Mr. Valles was therefore involuntarily terminated from the Company on July 30, 2020.

51.     The circumstances surrounding Mr. Valles' termination, including the asserted justification that Mr. Valles was not being a "good fit," clearly imply that Mr. Valles was terminated because of his race, color or in retaliation for raising protected concerns about the

discriminatory treatment he had experienced at the Company, including being called "nigger" on a continuous basis and for taking leave for COVID-19.

52.     The Company never investigated nor addressed Mr. Valles' protected concerns at any point during his employment, despite the fact he raised protected concerns as far up as the owner of the Company, Nuzzo.

53.     As the Company had a progressive discipline policy, and as Mr. Valles had never been issued any disciplinary action during his tenure with the Company, it is clear that the Company's reason for Mr. Valles' termination was purely pretextual.

54.     On or around May 14, 2021, Mr. Valles timely filed a Charge of Discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), which was cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").

55.     On or around September 21, 2021, Mr. Valles informed the CHRO of his intent to pursue his claims in court and accordingly requested that the CHRO release jurisdiction.

56.     On or around October 18, 2021, the CHRO issued Mr. Valles a release of jurisdiction to allow him to pursue his claims in court.

57.     On or around October 19, 2021, the EEOC provided Mr. Valles with a Notice of a Right to Sue letter.

58.     This lawsuit is timely filed.

## COUNT I

**(Race and Color Discrimination in Violation of Title VII, 42 U.S.C. §§2000e, et seq.)**

**Plaintiff v. the Company**

59.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

60.     During all relevant periods, the Company was an employer under Title VII, 42 U.S.C. §§2000e, et seq. (hereinafter, "Title VII") because it was a person engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks during the relevant calendar years.

61.     The Company, by and through its agents, including, but not limited to, Nuzzo, harassed and discriminated against Mr. Valles with respect to his compensation, terms, conditions, or privileges of employment, because of Mr. Valles's race (African American).

62.     More specifically, the Company subjected Mr. Valles to a pattern of racial discrimination while he was employed by the Company, including individuals in supervisory positions, including but not limited to Nuzzo, Texiera and Veena, who subjected Mr. Valles to a series of discriminatory comments, including the continuous use of the word "nigger" to Mr. Valles.

63.     Mr. Valles was further subjected to adverse actions, including, but not limited to, a harassing and hostile work environment, being singled out for taking leave for possible COVID-19 infection and the termination of his employment, in a discriminatory manner because of his race and/or color.

64.     The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Valles.

65.     As a direct and proximate result of the Company's violations of Title VII, Mr. Valles has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

66.     Mr. Valles seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

**COUNT II**

**(Race and Color Discrimination in Violation of 42 U.S.C. § 1981, et seq.)**

**Plaintiff v. All Defendants (The Company and Nuzzo)**

67.     The Plaintiff herein incorporates all paragraphs above and below as if set forth fully herein.

68.     During all relevant periods, the Company and Nuzzo were persons under the meaning of 42 U.S.C. § 1981, et seq. (hereinafter, "Section 1981") .

69.     The Company and Nuzzo harassed and discriminated against Mr. Valles with respect to his compensation, terms, conditions, or privileges of employment, because of Mr. Valles' race and/or color.

70.     More specifically, by way of illustration, the Defendants subjected Mr. Valles to a pattern of harassment including, but not limited to, by continuous discriminatory comments towards Mr. Valles, including the continuous use of the word "nigger."

71.     Mr. Valles was further subjected to adverse actions, including, but not limited to, a harassing and hostile work environment, being singled out for taking leave for possible COVID-19 infection and the termination of his employment, in a discriminatory manner because of his race and/or color.

72.     Nuzzo aided, abetted, incited, compelled and/or coerced the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under Section 1981.

73.     As a direct and proximate result of the Defendants' violations of Section 1981, Mr. Valles has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

74.     Mr. Valles seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.


**COUNT III**

**(Race and Color Discrimination in Violation of Conn. Gen. Stat. § 46(a)-60)**

**Plaintiff v. the Company**

75.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

76.     The Company is an employer under Conn. Gen. Stat. §46(a)-60 because it employs three or more persons.

77.     Mr. Valles is African American.

78.     The Defendants, including, but not limited to, its agents, harassed and discriminated against Mr. Valles with respect to his compensation, terms, conditions or privileges of employment, because of Mr. Valles' race and/or color.

79.     More specifically, the Defendants subjected Mr. Valles to a pattern of racial discrimination while he was employed by the Defendants, including individuals in supervisory positions, including but not limited to Nuzzo, Texiera and Veena , who subjected Mr. Valles to a series of discriminatory comments towards Mr. Valles, including the continuous use of the word "nigger."

80.     Mr. Valles was further subjected to adverse actions, including, but not limited to, a harassing and hostile work environment, being singled out for taking leave for possible COVID-19 infection and the termination of his employment, in a discriminatory manner because of his race and/or color.

81.     The Defendants committed these discriminatory acts in a willful, wanton and/or malicious manner.

82.     As a direct and proximate result of the Defendants' violation of Conn. Gen. Stat. §46(a)-60), Mr. Valles has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

83.     Mr. Valles seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay),

diminished earning capacity, injury to reputation, other monetary damages compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT IV

**(Retaliation in Violation of Title VII, 42 U.S.C. §§2000e, et seq.)**

**Plaintiff v. the Company**

84.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

85.     During all relevant periods, the Company was an employer under Title VII, 42 U.S.C. §§2000e, et seq. (hereinafter, "Title VII") because it was a person engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks during the relevant calendar years.

86.     The Company, by and through its agents and affiliates, including, but not limited Nuzzo, harassed and discriminated against Mr. Valles with respect to his compensation, terms, conditions, or privileges of employment, because of Mr. Valles' race.

87.     Mr. Valles engaged in protected activity under Title VII, including, but not limited to, by expressing concerns regarding, and otherwise opposing, the harassing and discriminatory comments and actions improperly undertaken by the Company, and by Company

employees and agents, based on the race and color of Mr. Valles, other African American employees, and other non-Caucasian employees.

88.     More specifically, the Company subjected Mr. Valles to adverse actions, including but not limited to, a harassing and hostile work environment, being singled out for negative treatment for taking leave for possible COVID-19 infection, and the termination of his employment because Mr. Valles engaged in protected activity by opposing the harassing and discriminatory comments and actions improperly undertaken by the Company, and by Company employees and agents, based on the race and color of Mr. Valles, other African American employees, and other non-Caucasian employees.

89.     The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Valles.

90.     As a direct and proximate result of the Company's violations of Title VII, Mr. Valles has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

91.     Mr. Valles seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

**COUNT V**

**(Retaliation in Violation of 42 U.S.C. § 1981, et seq.)**

**Plaintiff v. All Defendants (The Company and Nuzzo)**

92.     The Plaintiff herein incorporates all paragraphs above and below as if set forth fully herein.

93.     During all relevant periods, the Company and Nuzzo were persons under the meaning of 42 U.S.C. § 1981, et seq. (hereinafter, "Section 1981").

94.     The Company and Nuzzo harassed and discriminated against Mr. Valles with respect to his compensation, terms, conditions, or privileges of employment, because of Mr. Valles' race and/or color.

95.     Mr. Valles engaged in protected activity under Section 1981, including, but not limited to, raising protected concerns regarding, and otherwise opposing, harassing and discriminatory behavior and/or comments directed at himself and other African American and/or non-white employees in violation of Section 1981.

96.     Likewise, Mr. Valles engaged in protected activity under Section 1981, including, but not limited to, by expressing protected concerns regarding, and otherwise opposing, the harassing and discriminatory actions improperly undertaken by the Defendants, and by Company employees and agents, based on Mr. Valles' race, color, other African American employees, and other non-Caucasian employees and/or the creation of a hostile work environment through illegal harassment and discrimination.

97.     More specifically, by way of illustration, the Defendants subjected Mr. Valles to a pattern of harassment and retaliation by individuals employed by the Company, including, but not limited to, Nuzzo, who harassed Mr. Valles by allowing discriminatory comments, including the continuous use of the word "nigger" to Mr. Valles after he raised protected concerns

regarding this discriminatory behavior, singling him out for worse treatment for taking leave for COVID-19, and terminating Mr. Valles because he engaged in protected activity by opposing the harassing and discriminatory comments and actions improperly undertaken by the Company, and by Company employees and agents, based on Mr. Valles' race and/or color.

98.     The Defendants acted with malice and/or with reckless indifference to the federally protected rights of Mr. Valles.

99.     As a direct and proximate result of the Defendants' violations of Section 1981, Mr. Valles has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

100.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

**COUNT VI**

**(Retaliation for Engaging in Protected Activity in Violation of Conn. Gen. Stat. § 46(a)-60)**

**Plaintiff v. The Company**

101.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

102.     Mr. Valles engaged in protected activity(ies) under Conn. Gen. Stat. §46(a)-60, including, but not limited to, by expressing concerns regarding, and otherwise opposing, the harassing and discriminatory actions improperly undertaken by the Defendants, and by

Defendants' employees and agents, based on Mr. Valles' race and/or color, other African American employees, and other non-Caucasian employees.

103.    The Defendants unlawfully coerced, intimidated, threatened and/or interfered with Mr. Valles' exercising of or enjoyment of rights granted by Conn. Gen. Stat. §46(a)-60.

104.    More specifically, the Defendants discriminated and/or retaliated against Mr. Valles for opposing unlawful harassment and discrimination, by subjecting Mr. Valles to adverse actions, including, but not limited to, subjecting Mr. Valles to a harassing and hostile work environment, singling him out for taking leave for COVID-19 and/or terminating Mr. Valles employment in a retaliatory manner because Mr. Valles engaged in protected activity by opposing the harassing and discriminatory comments and actions improperly undertaken by the Company, and by Company employees and agents, based on the race and color of Mr. Valles, other African American employees, and other non-Caucasian employees.

105.    The Defendants committed these discriminatory and retaliatory acts in a willful, wanton and/or malicious manner.

106.    As a direct and proximate result of the Defendants' violation of Conn. Gen. Stat. §46(a)-60, Mr. Valles has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

107.    Mr. Valles seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain,

suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT VII

### (Failure to Pay Overtime in Violation of 29 U.S.C. §§ 201 et seq.)
### Plaintiff v. All Defendants (the Company and Nuzzo)

108.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

109.    At all relevant times, the Company was an enterprise as defined under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (hereinafter, "FLSA").

110.    Indeed, at all relevant times, the Company had annual gross volume of sales made or business done greater than or equal to $500,000.

111.    Furthermore, at all relevant times, the Company was an enterprise engaged in interstate commerce.

112.    Additionally, during all relevant time periods, Mr. Valles was an employee who was engaged in interstate commerce.

113.    Mr. Valles was not exempt under the FLSA and equivalent state law, and as such was owed overtime pay of 1.5x his base rate when she worked more than 40 hours per week.

114.    The Company was aware that Mr. Valles was a non-exempt employee under the FLSA and equivalent state law and willfully failed to pay Mr. Valles the wages he was owed.

115.    The Company scheduled Mr. Valles to work more than 40 hours per week and Mr. Valles did in fact always work more than 40 hours per week.

116.    Mr. Valles would always work a total of at least 10 hours a day, five days a week. All of these hours were working time, as Mr. Valles would work through his lunch period and

did not take off other breaks. Thus, Mr. Valles was working for all of these 10 hours (or more) per day.

117.    Accordingly, Mr. Valles worked at least 50 hours per week every week of his employment, and often more.

118.    Furthermore, at a frequency of at least 1 day per week (and sometimes more), Mr. Valles would work more than 10 hours per day due to the demands of his work. Thus, in most weeks, Mr. Valles in fact worked for more than 50 hours, sometimes significantly more.

119.    For example, during the week of March 16, 2020, through March 20, 2020, Mr. Valles worked more than 50 hours due to the demands of increased demand during the COVID-19 pandemic. Indeed, Mr. Valles worked from 8am to 7pm and worked through his lunch break during every day of this week. This is but one illustrative example of the many weeks in which Mr. Valles worked significantly in excess of 50 hours.

120.    During his employment, Mr. Valles would start work no later than 8am, would work through his lunch break, and would end work at 6pm or later.

121.    As such, Mr. Valles, worked a total of at least 10 hours of overtime every week of his employment through his termination on July 30, 2020, and often more.

122.    Mr. Valles was not paid anything extra for the overtime hours he worked, as he received no extra pay for working overtime hours.

123.    As such, the Defendants paid Mr. Valles less than the wages owed to him under the FLSA and equivalent state law.

124.    Nuzzo is a corporate officer and/or manager of the Company and exercised significant operational control over the Company (and the Plaintiff), including because he had

the power to hire and/or fire employees, the power to determine salaries and the responsibility to maintain employment records. As such, Nuzzo is individually liable under the FLSA.

125.   The Company knowingly and willfully failed to pay Mr. Valles all pay that he was owed in violation of the FLSA.

126.   As a direct and proximate result of the Defendant's violations of the FLSA, Mr. Valles has suffered and continues to suffer damages, including, but not limited to, lost wages.

127.   Mr. Valles seeks all damages to which he is entitled, including, but not limited to, lost wages, liquidated damages in the amount of the lost wages for a knowing and willful violation of the FLSA, interest on the lost wages and liquidated damages, attorneys' fees, and costs.

## COUNT VIII

### (Failure to Pay Overtime in Violation of Conn. Gen. Stat. § 31-76B)

### Plaintiff v. All Defendants (the Company and Nuzzo)

128.   The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

129.   The Company is an employer as defined under the Conn. Gen. Stat. § 31-60.

130.   The Company employed Mr. Valles.

131.   In violation of Conn. Gen. Stat. § 31-76B, the Company routinely failed to pay Mr. Valles all wages that he was owed for the hours that he worked, including, but not limited to, during the period of time when Mr. Valles worked overtime hours without receiving proper compensation.

132.   Indeed, the Company regularly scheduled Mr. Valles to work more than 40 hours per week and Mr. Valles did in fact always work more than 40 hours per week.

133.    Mr. Valles would always work a total of at least 10 hours a day, five days a week. All of these hours were working time, as Mr. Valles would work through his lunch period and did not take off other breaks. Thus, Mr. Valles was working for all of these 10 hours (or more) per day.

134.    Accordingly, Mr. Valles worked at least 50 hours per week every week of his employment, and often more.

135.    Furthermore, at a frequency of at least 1 day per week (and sometimes more), Mr. Valles would work more than 10 hours per day due to the demands of his work. Thus, in most weeks, Mr. Valles in fact worked for more than 50 hours, sometimes significantly more.

136.    For example, during the week of March 16, 2020, through March 20, 2020, Mr. Valles worked more than 50 hours due to the demands of increased demand during the COVID-19 pandemic. Indeed, Mr. Valles worked from 8am to 7pm and worked through his lunch break during every day of this week. This is but one illustrative example of the many weeks in which Mr. Valles worked significantly in excess of 50 hours.

137.    During his employment, Mr. Valles would start work no later than 8am, would work through his lunch break, and would end work at 6pm or later.

138.    As such, Mr. Valles, worked a total of at least 10 hours of overtime every week of his employment through his termination on July 30, 2020, and often more.

139.    Mr. Valles was not paid anything extra for the overtime hours he worked, as he received no extra pay for working overtime hours.

140.    As such, the Defendant paid Mr. Valles less than the wages owed to him under Conn. Gen. Stat. § 31-76B.

141.    Nuzzo is an agent or officer of the Company acting in the interest of the employer in relation to employees, who paid Mr. Valles less than the wages owed to him under Connecticut law.

142.    The violation of Conn. Gen. Stat. § 31-76B by the Defendants committed with intentional or reckless indifference to Mr. Valles' rights.

143.    As a direct and proximate result of the violation of Conn. Gen. Stat. § 31-76B by the Company, Mr. Valles has suffered and continues to suffer damages, including, but not limited to lost wages.

144.    Mr. Valles seeks all damages to which he is entitled, including, but not limited to, lost wages, punitive damages in the amount of the lost wages for a knowing and willful violation of Conn. Gen. Stat. § 31-76B, interest on lost wages, attorneys' fees, and costs.

WHEREFORE, the Plaintiff, Edzer Valles, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendants liable on all counts;

C.  Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay);

D.  Award the Plaintiff other monetary damages, including damages for his diminished earning capacity and injury to reputation;

E.  Award the Plaintiff damages for his emotional pain, mental anguish, loss of enjoyment of life, suffering, and other emotional distress damages;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff his unpaid wages, including overtime-related wages;

H.  Award the Plaintiff punitive and liquidated damages for his unpaid wages, including overtime-related wages;

I.  Award the Plaintiff punitive damages;

J.  Award the Plaintiff liquidated damages.

K.  Award the Plaintiff his reasonable attorney's fees;

L.  Award the Plaintiff interest and costs;

M.  Award the Plaintiff all other damages to which he is entitled; and

N.  Grant such further relief as is just and equitable.

Respectfully Submitted,

EDZER VALLES

By his attorneys,

THE LAW OFFICES OF WYATT &
ASSOCIATES P.L.L.C

Date: October 19, 2021                     By:    _/s/ Trevor R. Brice_____

Benjamin J. Wyatt, ct29994
BWyatt@Wyattlegalservices.com

Michael Varraso, ct30777
MVarraso@wyattlegalservices.com

Trevor R. Brice, ct30951
Trevor@Wyattlegalservices.com


The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1112
Facsimile: (603) 685-2868